UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**GREAT LAKES ENERGY COOPERATIVE,**

Plaintiff,

v.

Case No.
Honorable

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 876,**

Defendant.

---

**BODMAN PLC**
Aaron D. Graves (P66737)
Cameron D. Ritsema (P86887)
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, MI 48226
(313) 392-1075
agraves@bodmanlaw.com
critsema@bodmanlaw.com
*Attorneys for Plaintiff*

---

## COMPLAINT

Plaintiff, Great Lakes Energy ("Plaintiff"), by its attorneys Bodman PLC, for its Complaint against Defendant International Brotherhood of Electrical Workers, Local 876 ("Defendant"), states as follows:

1. This is an action to vacate an arbitration award issued by Arbitrator Stanley T. Dobry, *Esq.* ("Arbitrator"), on July 7, 2026, in FMCS Case No. 250716-07994, pursuant to Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, *et seq.* ("LMRA") and the Federal Arbitration Act, 9 U.S.C. § 10, *et seq.* ("FAA").

2. This action is timely because it was commenced within three (3) months of the award, consistent with the limitations period applied to § 301 actions seeking vacatur of labor arbitration awards in the Sixth Circuit. *Occidental Chem. Corp. v. Int'l Chem. Workers Union, Local 820*, 853 F.2d 1310 (6th Cir. 1988).

3. Although judicial review of labor arbitration awards is limited, an arbitrator exceeds his authority when he dispenses his own brand of industrial justice, modifies the parties' collective bargaining agreement, or imposes obligations not found in the agreement.

4. While the underlying grievance challenged Plaintiff's treatment of employees occupying the bargaining unit classifications of Payroll Coordinator and Credit/Collections Advisor, the Arbitrator ordered that entirely different positions, Payroll Administrator and Claims and Compliance Coordinator, be "restored to the bargaining unit."

5. Neither the Payroll Administrator nor the Claims and Compliance Coordinator position is a bargaining unit classification listed in the collective bargaining agreement.

6. In ordering Plaintiff to place classifications not listed in the collective bargaining agreement into the bargaining unit, the Arbitrator rewrote the parties' agreement, expanded the scope of the bargaining unit, and exercised authority expressly withheld from him by the collective bargaining agreement.

7. Accordingly, the award should be vacated.

## PARTIES, JURISDICTION, AND VENUE

8. Plaintiff is a Michigan based electric cooperative headquartered in Boyne City, Michigan, Charlevoix County, and which, at all pertinent times, has maintained facilities and operated in various locations throughout Michigan, and has been an employer in an industry affecting commerce as defined in the Act.

9. Defendant International Brotherhood of Electrical Workers, Local 876, is a labor organization with its principle office in Mt. Pleasant, Michigan, Isabella County. Defendant represents Plaintiff's employees for purposes of collective bargaining in Michigan, and is a labor organization representing employees in an industry affecting commerce as defined in the Act.

10. This Court has jurisdiction over this action pursuant to § 301 of the LMRA, 29 U.S.C. § 185, and under the provisions of the FAA, 9 U.S.C. § 10, *et seq*., this being an action to set aside an arbitration award under a collective bargaining agreement, by Plaintiff employer against Defendant labor organization representing employees in an industry affecting commerce, without respect to the amount in controversy or the citizenship of the parties.

11. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred within the district.

## THE CLEAR COMMANDS OF THE LABOR CONTRACT

12. Plaintiff and Defendant entered into a collective bargaining agreement, effective January 8, 2024, through January 8, 2027 ("CBA"), which specifically limits the

arbitrator's authority, subject to the Grievance Procedure, to "add to, subtract from, change or modify any provisions of [the CBA]..." (**Exhibit 1**, Article 20, Section 20.2).

13. Article 1 of the CBA does not include exempt employees as bargaining-unit employees and specifies that Defendant is the exclusive bargaining representative for full-time employees occupying classifications in Appendix B of the CBA:

**ARTICLE 1 – RECOGNITION**

> Section 1.1: Union Recognition. The Cooperative recognizes the Union as the exclusive collective bargaining representative for the purpose of collective bargaining with respect to rates of pay, wages, hours of employment, and other conditions of employment for all full-time employees who occupy the classifications contained in Appendix A of this Agreement for the Cooperative's Southern operations based in Newaygo, Reed City, Hart, Scottville and Wayland, Michigan, but excluding all part-time, temporary and seasonal persons employed and all other persons employed by the Cooperative.
>
> The Cooperative also recognizes the Union as such exclusive bargaining representative for the full-time employees who occupy the classifications contained in Appendix B of this Agreement for the Cooperative's Northern operations based in Boyne City, Petoskey, Kalkaska and Waters, Michigan, but excluding all part-time and temporary employees and all other persons employed by the Cooperative.
>
> Unless specified otherwise in this Agreement and any addendum to it, the term "employee" means only those full-time non-exempt (hourly) persons employed in either the Cooperative's Southern or Northern operations who are covered by this Agreement and employed within the bargaining units that the Union represents.…

(Exhibit 1, Article 1, Section 1.1).

14. Plaintiff has the right to promote bargaining-unit employees under Article 1, Section 1.2 of the CBA.

> Section 1.2: Management's Rights. The management of the Cooperative's operations and property is reserved by and will be vested exclusively in the Cooperative. The Cooperative will have the right to determine the extent of operations; to continue, abandon, alter, transfer or replace present or future equipment or facilities, and to add equipment, machinery or facilities, and the right to place any operation on standby or part-time operations, or to purchase services or supplies, and the right to determine the composition and number of employees.
>
> Subject only to such limitations as are specifically contained in this Agreement, the Cooperative will have the right to direct the working forces including but not limited to the right to hire, transfer, promote, lay off, discharge, and discipline employees[.] …

(Exhibit 1, Article 1, Section 1.2).

15. Article 20 of the CBA sets forth the parties' acknowledgment that the Agreement is a complete agreement, without regard to whether a subject was discussed or contemplated by the parties, and establishes that the CBA is limited to its four corners, and cannot be altered, added to, or otherwise amended, except by the mutual written consent of the parties.

**ARTICLE 25 – MISCELLANEOUS PROVISIONS**

> Section 25.13: Agreement Validity. No agreement or understanding contrary to this collective bargaining agreement, nor any alteration, variation, waiver or modification of any of the terms or conditions contained herein will be binding upon the parties hereto unless such agreement, understanding, alteration, variation, waiver or modification is executed in writing between the parties. It is further understood and agreed that this contract constitutes the sole, only, and entire agreement between the parties hereto and cancels and supersedes any other agreements, understandings, past practices, heretofore existing, and all said past agreements, understandings, past practices and

> arrangements are hereby made null and void and will not be admissible in the form of testimony or evidence at any arbitration hearing, court or administrative board.

(Exhibit 1, Article 25, Section 25.13).

16. In Section 20 of the CBA the parties specifically limited the authority of the Arbitrator to the four corners of the Agreement:

**ARTICLE 20 – GRIEVANCE PROCEDURE**

> <u>Section 20.2: Arbitration Procedures:</u> … The arbitrator will have no authority to add to, subtract from, change or modify any provisions of this Agreement or to hear or consider evidence or testimony relating to practices or occurrences which may have occurred prior to the execution of this Agreement, but will be limited solely to the interpretation and application of the specific provisions contained hearin.

(Exhibit 1, Article 20, Section 20.2).

17. Appendix B of the CBA identifies the bargaining-unit classifications applicable to Plaintiff's northern operations. Relevant classifications include Payroll Coordinator and Credit/Collections Advisor. (**Exhibit 1**, Appendix B).

18. Appendix B does not identify the position of Payroll Administrator. Nor does Appendix B identify the position of Claims and Compliance Coordinator. (**Exhibit 1**, Appendix B).

19. The positions of Payroll Administrator and Claims and Compliance Coordinator do not appear anywhere in the CBA and are not recognized bargaining-unit classifications under the CBA.

## FACTUAL BACKGROUND

20. The events giving rise to the grievance arose from a workforce restructuring implemented by Plaintiff during 2025. The restructuring affected both bargaining-unit and non-bargaining-unit employees.

21. Prior to the restructuring, employee Megan Furgeson ("Furgeson") occupied the bargaining-unit classification of Credit/Collections Advisor. That classification is listed in Appendix B of the CBA. (**Exhibit 1**, Appendix B).

22. As part of the restructuring, Furgeson received notice of layoff and was offered the position of Claims and Compliance Coordinator. The Claims and Compliance Coordinator position is a non-bargaining-unit position and is not listed as a bargaining-unit classification anywhere within the CBA. (**Exhibit 1**, Appendix B).

23. Furgeson accepted the Claims and Compliance Coordinator position and commenced employment in that role on September 1, 2025. She received increased compensation associated with the position.

24. In her Claims and Compliance Coordinator position, Furgeson performed duties that historically had been performed by non-bargaining-unit personnel, including insurance claims administration, tax payment functions, rebate administration, and grant reimbursement activities.

25. To the extent Furgeson had previously performed duties that were exclusive to her bargaining-unit classification, those duties were reassigned to other bargaining-unit employees.

26. Prior to the restructuring, employee Melissa Lyons ("Lyons") occupied the bargaining-unit classification of Payroll Coordinator. The Payroll Coordinator classification is expressly identified in Appendix B of the CBA. (**Exhibit 1**, Appendix B).

27. During the restructuring, Lyons was transferred from the accounting department to the human resources department and thereafter promoted to the position of Payroll Administrator.

28. The Payroll Administrator position is not identified in Appendix B and is not listed anywhere in the CBA as a bargaining-unit classification. (**Exhibit 1**, Appendix B).

29. The Payroll Administrator position is an exempt position. The CBA expressly excludes exempt employees from the bargaining unit and limits bargaining-unit status to covered non-exempt employees occupying classifications identified in Appendix B. (**Exhibit 1**, Article 1, Section 1.1).

30. As Payroll Administrator, Lyons assumed expanded responsibilities, exercised greater autonomy and higher level decision making authority, and performed responsibilities previously assigned to non-bargaining-unit supervisory personnel.

31. In addition to payroll functions, Lyons performed budgeting work, tax payment and withholding functions, FEMA related activities, insurance related work, labor cost and benefit pricing functions, and other duties not associated with the Payroll Coordinator classification.

32. As Payroll Administrator, Lyons also possessed access to confidential information concerning employee discipline, terminations, human resources processes, and labor relations matters, including information relating to union negotiations.

33. At all relevant times, the bargaining-unit classifications of Payroll Coordinator and Credit/Collections Advisor remained listed in Appendix B and remained recognized bargaining-unit classifications under the CBA. Plaintiff did not remove either classification from Appendix B.

34. The CBA does not require Plaintiff to maintain a filled incumbent in every bargaining-unit classification at all times. Nor does the CBA prohibit Plaintiff from promoting or transferring employees into non-bargaining-unit positions. To the contrary, the CBA expressly reserves Plaintiff's right to promote, transfer, and direct its workforce and expressly contemplates transfers into positions outside the bargaining unit. (**Exhibit 1**, Article 1, Section 1.2).

35. The CBA contains a grievance and arbitration procedure through which alleged violations of the Agreement may be challenged. (**Exhibit 1**, Article 20).

## THE GRIEVANCE & ARBITRATION PROCEEDINGS

36. On May 30, 2025, Defendant filed a grievance alleging that Plaintiff had "made a unilateral change to the collective bargaining agreement by eliminating bargaining unit positions" in violation of Article 1, Section 1.1, Article 1, Section 1.2, Appendix B, and other unspecified provisions of the CBA. (**Exhibit 2,** "Grievance").

37. The Grievance requested that the affected positions be maintained as bargaining-unit positions and that affected employees be made whole. (**Exhibit 2**).

38. The Grievance did not identify Payroll Administrator or Claims and Compliance Coordinator as bargaining-unit classifications contained in the CBA. Nor did the Grievance seek amendment of Appendix B or expansion of the bargaining unit to include classifications not negotiated by the parties.

39. The parties proceeded to arbitration before the Arbitrator on December 11, 2025. At arbitration, Plaintiff asserted that it had exercised contractual management rights by promoting employees to non-bargaining-unit positions while leaving the underlying bargaining-unit classifications intact.

40. Plaintiff further argued that the CBA expressly reserves Plaintiff's right to promote and transfer employees, expressly contemplates transfers to positions outside of the bargaining unit, and does not require Plaintiff to maintain filled incumbents in every bargaining-unit classification.

## THE ARBITRATOR'S AWARD

41. On July 7, 2026, the Arbitrator issued an award sustaining the grievance. (**Exhibit 3**, "Award").

42. Despite the clear and mandatory commands of the CBA, on page 33, section paragraph 3 of the Award, the Arbitrator ordered: "that the positions of Payroll Administrator and 2) Claims and Compliance Coordinator be restored to the bargaining unit[.]" (**Exhibit 3**).

43. The Award does not identify any provision of Appendix B listing Payroll Administrator or Claims and Compliance Coordinator as bargaining-unit classifications.

44. The Award does not identify any provision of the CBA authorizing the Arbitrator to create new bargaining-unit classifications, amend Appendix B, or expand the Recognition Clause beyond the classifications expressly negotiated by the parties.

45. By ordering that Payroll Administrator and Claims and Compliance Coordinator be "restored to the bargaining unit[]" the Arbitrator did not interpret existing classifications appearing in Appendix B. Rather, the Arbitrator imposed bargaining-unit status upon two positions that are not bargaining-unit classifications under the CBA.

46. The Award therefore adds classifications to the bargaining unit, expands the scope of representational coverage beyond the classifications recognized by the CBA, and modifies the CBA in direct contravention of the contractual limitations imposed upon the Arbitrator.

47. Even assuming *arguendo* that the Arbitrator concluded the CBA had been violated, the remedy imposed by the Award is not derived from any express provision of the CBA and instead supplies contractual terms and bargaining-unit coverage that the parties themselves did not negotiate or adopt.

48. The Award therefore modifies the bargaining unit described by the CBA.

49. The Award further expands the scope of representational coverage beyond the contractual classifications negotiated by the Parties.

50. Such relief exceeds the Arbitrator's contractual authority because the parties expressly prohibited the Arbitrator from "add[ing] to, subtract[ing] from,

chang[ing] or modify[ing] any provisions of this Agreement. (**Exhibit 1**, Article 20, Section 20.2).

51. The Award fails to draw its essence from the CBA and instead reflects the Arbitrator's own notions of industrial justice.

52. Thus, the Award is subject to vacatur.

**COUNT I – VACATUR OF ARBITRATION AWARD PURSUANT TO SECTION 301 LMRA, 29 U.S.C. § 185, *et seq.* AND FAA, 9 U.S.C. § 10, *et seq.***

53. Plaintiff reincorporates paragraphs 1 through 53 as if fully stated herein.

54. Pursuant to 29 U.S.C. § 185, *et seq*., and 9 U.S.C. § 10, *et seq*., Federal courts may vacate a labor arbitration award where the arbitrator exceeds contractual authority.

55. The CBA expressly limits the Arbitrator's powers and prohibits adding, subtracting, changing, or modifying the agreement.

56. By ordering the Payroll Administrator and Claims and Compliance Coordinator positions placed into the bargaining unit, the Arbitrator altered and expanded the CBA's bargaining unit classifications expressed within Appendix B.

57. The Award conflicts with the express terms of the CBA, imposes additional requirements upon Plaintiff not expressly provided for in the CBA, is not rationally supported by or derived from the CBA, and is not based on the exact terms of the CBA.

58. Because the Award compels Plaintiff to recognize and bargain over positions that are not bargaining-unit classifications under the CBA, the Award rewrites the CBA rather than interprets it. The Award therefore exceeds the Arbitrator's

authority, fails to draw its essence from the CBA, and is unenforceable as a matter of federal labor law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Great Lakes Energy Cooperative respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff;

B. Vacate the July 7, 2026, arbitration Award issued by Stanley T. Dobry in FMCS Case No. 250716-07994;

C. Declare that the Arbitrator exceeded the authority granted to him under the CBA by ordering that the positions of Payroll Administrator and Claims and Compliance Coordinator be included in, restored to, or otherwise treated as bargaining-unit classifications under the CBA;

D. Declare that the CBA recognizes only those bargaining-unit classifications expressly identified in Appendix B, and that neither Payroll Administrator nor Claims and Compliance Coordinator is a bargaining-unit classification under the CBA;

E. Declare that the Award impermissibly added to, changed, modified, and expanded the CBA and bargaining-unit structure established by the parties, contrary to the limitations expressly imposed upon the Arbitrator by Article 20, Section 20.2 of the CBA;

F. Award Plaintiff its costs and any applicable attorney fees; and

G. Grant such other relief as the Court deems just and appropriate.

Respectfully Submitted,

**BODMAN PLC**

By: /s/ *Cameron D. Ritsema*
Aaron D. Graves (P66737)
Cameron D. Ritsema (P86887)
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, MI 48226
(313) 392-1075
agraves@bodmanlaw.com
critsema@bodmanlaw.com
*Attorneys for Plaintiff Great Lakes Energy*

Date: October 1, 2026